

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00134-CR

WILLIAM EDWARD MARCHBANKS                    APPELLANT

V.

THE STATE OF TEXAS                                   STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## OPINION

----------

In two points, appellant William Edward Marchbanks appeals his convictions for aggravated assault against a public servant and aggravated robbery.[1] We affirm.

---

[1]*See* Tex. Penal Code Ann. § 22.02(a)(2), (b)(2)(B) (Vernon Supp. 2010), § 29.03(a)(2) (Vernon 2003).

## Background Facts

One afternoon in August 2009, Richland Hills Police Department Officer Zachary Gibson was working at a Dillard's department store.[2] Gibson saw appellant take two stacks of shirts off a display in the men's department and run outside the store. Gibson, who was in uniform, identified himself as a police officer and ran toward appellant as appellant entered into his car. Appellant shut his driver's side door, but his window was down, so Gibson grabbed appellant's shirt, told him to get out of the car, and tried to pull him out. Appellant did not get out of the car; instead, he revved his motor, placed the car in the forward gear, and quickly accelerated while Gibson was hanging out of the window. Gibson told appellant, "Stop the car. You're going to kill me." Eventually, another car hit appellant's car, which threw Gibson off of the car, injuring him. Other police officers stopped appellant, found the shirts he had stolen (valued at $849.83), and arrested him.

A grand jury indicted appellant for aggravated assault against a public servant and aggravated robbery. Appellant pled not guilty to both offenses. The jury convicted him of both offenses and assessed his punishment at thirty-eight years' confinement for aggravated assault and thirty-five years' confinement for aggravated robbery. The trial court sentenced appellant accordingly, and he filed notice of this appeal.

---

[2]Gibson worked for the Fort Worth Police Department at the time of the trial.

**Standard of Review**

Both of appellant's points concern the trial court's decisions to deny his motions for mistrial. We review a trial court's denial of a motion for mistrial under an abuse of discretion standard and must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Orr v. State*, 306 S.W.3d 380, 403 (Tex. App.—Fort Worth 2010, no pet.) (citing *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007)); *see Ratliff v. State*, 320 S.W.3d 857, 863 (Tex. App.—Fort Worth 2010, pet. ref'd); *West v. State*, 121 S.W.3d 95, 107 (Tex. App.—Fort Worth 2003, pet. ref'd) (explaining that we are ordinarily deferential to a trial court's decision to deny a motion for mistrial). Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required. *Orr*, 306 S.W.3d at 403; s*ee Ratliff*, 320 S.W.3d at 863. A mistrial is appropriate only for a narrow class of highly prejudicial and incurable errors and may be used to end trial proceedings when the error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Orr*, 306 S.W.3d at 403 (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)); *see also Grotti v. State*, 209 S.W.3d 747, 776 (Tex. App.—Fort Worth 2006) ("The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case."), *aff'd*, 273 S.W.3d 273 (Tex. Crim. App. 2008).

**Denial of First Motion for Mistrial**

In his first point, appellant argues that the trial court abused its discretion by denying the motion for mistrial that he made in the middle of the trial. During

Gibson's initial cross-examination by appellant's counsel, he repeatedly denied punching appellant while hanging out of appellant's car; Gibson said that appellant moved his head on his own and that there was "no haymaker by any means." But after Gibson's initial testimony concluded, during a lunch break, the prosecutor listened to one of the videos that had been admitted into evidence and heard Gibson say on the video that he had sucker punched appellant. After the prosecutor disclosed that fact to appellant's counsel, appellant requested a mistrial based on the State's nondisclosure of exculpatory evidence in advance of the trial court's discovery deadline. The trial court denied appellant's motion but allowed appellant to recall any witnesses to more fully develop the issue.

Before resting its case, the State recalled Gibson. He said that he did not remember punching appellant. But he did not deny punching appellant because he had said that he did so on the day of appellant's offenses.[3]

Appellant contends that the trial court should have granted a mistrial because the State violated his right to due process by knowingly using perjured testimony from Gibson. A prosecutor's knowing use of perjured testimony "violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Ex parte Castellano*, 863 S.W.2d 476, 479 (Tex. Crim. App. 1993); *see also Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 ("The

---

[3]When the State asked Gibson why he did not remember punching appellant, he said, "I don't remember a whole lot once the whole incident took place, once the adrenaline kicked in . . . ." Later, he said, "If I stated [that I punched appellant], then I did. I'm not denying that."

principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness."). "If the prosecution presents false testimony which relates to an essential element of the offense, *and fails to correct its own testimony*, then reversal will naturally follow."[4]  *Onate v. State*, 62 S.W.3d 208, 211 (Tex. App.—El Paso 2001, pet. ref'd) (emphasis added); *see Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002); *Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986) ("If the prosecution presents a false picture of the facts *by failing to correct its own testimony when it becomes apparent that the testimony was false*, then the conviction must be reversed.") (emphasis added).

Even if we assume, for the sake of argument, that Gibson's initial testimony that he did not punch appellant qualifies as perjury,[5] the State

---

[4]In some circumstances, a witness's perjury may be imputed to a prosecutor who lacks actual knowledge of the testimony's falsity. *See Castellano*, 863 S.W.2d at 480–81 & n.3; *Ex parte Adams*, 768 S.W.2d 281, 291–92 (Tex. Crim. App. 1989); *Page v. State*, 7 S.W.3d 202, 208 (Tex. App.—Fort Worth 1999, pet. ref'd) (explaining that a police officer's knowledge may be imputed to a prosecutor).

[5]A witness does not commit perjury by testifying falsely because of a reasonable mistake, such as faulty memory.  *See* Tex. Pen. Code Ann. § 37.02 (Vernon 2003) (requiring an intent to deceive to sustain a perjury conviction); *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (explaining that perjury does not occur when a witness honestly but mistakenly believes a statement to be true when made).

5

thereafter acted precisely according to what the authority cited above requires; it corrected Gibson's misstatement by informing appellant's counsel about Gibson's recorded admission and recalling Gibson to account for the misstatement. *See Losada*, 721 S.W.2d at 311. Thus, we hold that the trial court did not abuse its discretion by denying appellant's motion for mistrial on the basis of the State's alleged use of perjured testimony. *See Orr*, 306 S.W.3d at 403.

Next, appellant argues that the trial court should have granted a mistrial because the State failed to timely disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963). As we have explained,

> Under *Brady*, in order to ensure the accused a fair trial, a prosecutor has an affirmative duty under the Due Process Clause of the Fourteenth Amendment to turn over to the accused all exculpatory or impeachment evidence, irrespective of the good faith or bad faith of the prosecution, which is favorable to the defendant and is material to either guilt or punishment. This duty attaches as soon as the information comes into the prosecutor's possession, with or without a request from the defense for such evidence, and the information must be disclosed to the accused in time to put it to effective use at trial.

> A due process violation occurs if: (1) the prosecutor fails to disclose evidence; (2) the evidence is favorable to the defendant; and (3) the evidence is material. Favorable evidence is "material" if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Franks v. State*, 90 S.W.3d 771, 796 (Tex. App.—Fort Worth 2002, no pet.) (citations omitted); *see Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App.

6

2002); *Proctor v. State*, 319 S.W.3d 175, 184 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Before appellant's trial began, the State gave appellant's counsel copies of videos related to the altercation between appellant and Gibson, including the video that contained Gibson's admission that he had punched appellant. If appellant's counsel did not learn about Gibson's admission upon receiving the videos, he became aware of it during the middle of the trial, at a time in which he could (and did) question Gibson about it and use it extensively during his closing jury argument. "If the defendant received [favorable evidence] in time to use it effectively at trial, his conviction should not be reversed just because it was not disclosed as early as it might have and should have been." *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999); *see Juarez v. State*, 439 S.W.2d 346, 348 (Tex. Crim. App. 1969); *State v. DeLeon*, 971 S.W.2d 701, 706 (Tex. App.—Amarillo 1998, pet. ref'd) ("[T]here is no *Brady* violation if the defendant receives the evidence in time to put it to effective use."); *Givens v. State*, 749 S.W.2d 954, 957 (Tex. App.—Fort Worth 1988, pet. ref'd).

Appellant does not argue that he would have used Gibson's admission differently or more effectively had he known about it sooner. He asserts, however, that the State's express disclosure of appellant's admission came "so late that the disclosure and subsequent recall of Gibson could not dispel the images already placed in the jury's mind from his earlier testimony" and that this

7

problem was "compounded by the [p]rosecutor in jury argument telling the jury that the impeaching evidence was not true."

The record does not support this argument. After appellant's counsel learned of Gibson's recorded admission, counsel spent the majority of the remainder of the guilt phase of the trial focusing on whether Gibson punched appellant and whether that fact contradicted Gibson's original testimony.[6] During the State's closing argument, it conceded that Gibson's admission of punching appellant had occurred, stating,

> [W]e can no more stand before you and say that Officer Gibson never said anything about a sucker punch any more than the defense can get up here and say that the defendant didn't commit aggravated robbery or aggravated assault on a public servant, because guess what, both of those are on video. It is what it is.

In the remainder of the State's argument, it did not expressly contend that the punch had not occurred; instead, it argued that the punch was irrelevant to the jury's consideration of appellant's guilt.[7]

---

[6]Appellant's only witness, who enhanced the video of the altercation between appellant and Gibson, testified for the sole purpose of establishing that appellant's head movement corresponded with Gibson's arm entering appellant's car.

[7]The prosecutor said,

> So let's just assume for the sake of argument that Officer Gibson did hit him. The 12 of you go back there, and you-all agree he hit him. So what? What does that have to do with the elements of the offense that are in this indictment, that are in this Court's charge that have to be proven? Nothing.

8

For all of these reasons, we hold that the trial court did not abuse its discretion by denying appellant's motion for mistrial based on an alleged *Brady* violation.  We overrule appellant's first point.

**Denial of Second Motion for Mistrial**

In his second point, appellant contends that the trial court abused its discretion by denying his motion for mistrial because of an allegedly improper jury argument by the State.  Appellant's trial counsel spent the majority of his closing argument discussing Gibson's inconsistent testimony about punching appellant.[8]  After appellant's counsel concluded the argument, the State contended in its final jury argument that appellant was using a "smoke screen" by talking about Gibson's acts rather than appellant's offenses.  The prosecutor said, "What the defense is doing is what we call jury nullification."  Appellant's counsel objected, stating, "It's outside the record.  There is no definition of that." The trial court sustained the objection and instructed the jury to disregard the argument, but the trial court denied appellant's motion for mistrial.

---

[8]Appellant's counsel said in part,

You are judging the evidence in this case, so based upon what you saw, how it went down, how he had to be brought back, would you buy a used car from [Gibson]? . . .

. . . .

I think with all due respect, he's young enough to learn a lesson, and he needs to learn a lesson now before he's on patrol in the City of Fort Worth.  I think the lesson he needs to learn and the message you need to send is you got -- you got to tell the truth. . . .

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). Appellant contends on appeal that the State's "jury nullification" argument was improper because it (1) was not a proper response to his counsel's argument, (2) attempted to "accuse defense counsel of improper conduct and in so doing was striking at the accused over and through the shoulders of his counsel," (3) denied him a fair trial by "imputing a false motive to defense counsel's argument," and (4) was "designed to and did deprive" appellant of constitutional and statutory protections. These contentions, however, do not match the objection at trial, which was that "jury nullification" was undefined and that the State's argument was "outside the record."

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A

10

reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). An objection preserves only the specific ground cited. Tex. R. App. P. 33.1(a)(1)(A); *Lugo v. State*, 299 S.W.3d 445, 450 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004)).

The requirement that a trial objection comport to a complaint on appeal applies to jury argument points. *See Turner v. State*, 87 S.W.3d 111, 117 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 965 (2003); *Coffey v. State*, 796 S.W.2d 175, 179–80 (Tex. Crim. App. 1990); *Bouchillon v. State*, 540 S.W.2d 319, 322 (Tex. Crim. App. 1976) (holding that a contention on appeal that the State's jury argument commented on a defendant's failure to testify was forfeited because at trial the defendant objected on the ground that the argument was "outside the record"); *Curiel v. State*, 243 S.W.3d 10, 19 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("At trial, appellant objected on the grounds that the State's argument improperly shifted the burden of proof; here, he contends that the State improperly commented on post-arrest silence. . . . [A]ny error is waived."). Because appellant's trial objection to the State's jury argument is inconsistent with his complaints on appeal, we hold that he forfeited his second point, and we overrule the point.

11

**Conclusion**

Having overruled both of appellant's points, we affirm the trial court's judgments.

CHARLES BLEIL
JUSTICE

PANEL: GARDNER and MCCOY, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

PUBLISH

DELIVERED: May 5, 2011