

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00217-CR
No. 02-21-00218-CR
No. 02-21-00219-CR
No. 02-21-00220-CR
No. 02-21-00221-CR
No. 02-21-00222-CR
No. 02-21-00223-CR
No. 02-21-00224-CR
No. 02-21-00225-CR
No. 02-21-00226-CR
No. 02-21-00227-CR
No. 02-21-00228-CR
No. 02-21-00229-CR
No. 02-21-00230-CR
No. 02-21-00231-CR
No. 02-21-00232-CR
No. 02-21-00233-CR
No. 02-21-00234-CR
No. 02-21-00235-CR
No. 02-21-00236-CR
No. 02-21-00237-CR
No. 02-21-00238-CR
No. 02-21-00239-CR

———————————————

MICHAEL GEORGE COREY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court Nos.
DC30-CR2019-0383, DC30-CR2019-0394, DC30-CR2019-0397,
DC30-CR2019-0398, DC30-CR2019-0399, DC30-CR2019-0400,
DC30-CR2019-0401, DC30-CR2019-0403, DC30-CR2019-0413,
DC30-CR2019-0414, DC30-CR2019-0415, DC30-CR2019-0416,
DC30-CR2019-0417, DC30-CR2019-0418, DC30-CR2019-0419,
DC30-CR2019-0420, DC30-CR2019-0421, DC30-CR2019-0422,
DC30-CR2019-0423, DC30-CR2019-0424, DC30-CR2019-0425,
DC30-CR2019-0426, DC30-CR2019-0427

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

A jury convicted Appellant Michael George Corey of twenty-three sexual offenses against three children—Ann, Brenda, and Curt[1]—and assessed his punishment at two life sentences, one fifty-year sentence, five fifteen-year sentences, and fifteen ten-year sentences. *See* Tex. Penal Code Ann. §§ 21.02(b) (continuous sexual abuse of a child), 21.11(a)(1) (indecency with a child by contact), 21.11(a)(2) (indecency with a child by exposure); 22.021(a)(1)(B), (a)(2)(B) (aggravated sexual assault). The trial court sentenced Corey accordingly. It further ordered the sentences to run consecutively. Corey appeals all twenty-three convictions. On appeal, Corey raises two points.

First, Corey asserts that the trial court erred by admitting eleven photographs of the injuries that he had inflicted on Curt. Corey had previously been convicted of injury to a child for causing those injuries, and he had stipulated to that fact. Corey thus argues that the photographs' probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Because comparable evidence came in without objection, we hold that Corey failed to preserve this first complaint and, further, that the error, if any, was harmless.

---

[1]To protect the children's identities, we use pseudonyms to identify them. *See* Tex. R. App. P. 9.8 cmt.; *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

Second, Corey argues that the trial court erred by denying his motion for mistrial after a witness testified that Brenda was being truthful. Because the trial court instructed the jury to disregard the witness's comment, and because we presume that the jury followed that instruction, we hold that the trial court did not abuse its discretion by denying Corey's motion for mistrial.

We thus overrule both points and affirm the trial court's judgments.

## I. THE PHOTOGRAPHS

In Corey's first point, he complains about the trial court's admitting eleven photographs (State's Exhibits 2 through 12) showing Curt's injuries, which Corey had caused and for which Corey had been convicted of injury to a child. Corey asserts that because he had already stipulated that he was guilty of that offense, the probative value of those photographs was substantially outweighed by the danger of unfair prejudice. *See id.* The State responds that Corey has not preserved this complaint for appellate review. The State also argues that the error, if any, was harmless. We agree with the State.

## A. Preservation

Appellate courts should not address complaints that an appellant has not preserved for review. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). To preserve a complaint, a party must make a timely objection and obtain a ruling. Tex. R. App. P. 33.1(a)(1)–(2). Additionally, the party must object each time the allegedly objectionable evidence is offered or must obtain a running objection. *Valle v. State*,

4

109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Error in admitting evidence is cured if the same evidence comes in elsewhere without objection. *Id.*

For example, when the trial court admits an exhibit over a defendant's objection, but the defendant fails to object when a witness testifies about the exhibit's contents, the defendant forfeits his appellate complaint. *See Clay v. State*, 361 S.W.3d 762, 765–67 (Tex. App.—Fort Worth 2012, no pet.). More specifically, this principle applies when a defendant objects to photographs but fails to object to testimony describing those photographs. *See Mallory v. State*, No. 02-17-00279-CR, 2019 WL 618893, at *12 (Tex. App.—Fort Worth Feb. 14, 2019, pet. ref'd) (mem. op., not designated for publication).

Here, after the trial court overruled Corey's objection, the jury heard Officer Betty Dean testify, without objection, that when she went to the hospital, she saw "severe bruising and swelling to [Curt's] buttocks" along with "swelling and bruising to the inner, outer, and back side of . . . his left ear." The State then asked Officer Dean whether the eleven photographs accurately represented Curt's injuries; she agreed that they did. Then Officer Dean—who had served as an officer for the Wichita Falls Police Department for thirty-one years—testified, without objection, that she had "never seen injuries that severe." The State walked Officer Dean through each of the photographs individually and asked her to describe what they depicted, and she testified, again without objection, about the bruising and swelling to Curt's ear and the swelling and scabbing to his buttocks. When Officer Dean was shown the

5

injuries to Curt's buttocks, she commented, "I'm sorry. It's hard for me to see this." She added, "[W]hen we see scabbing on a child's injury, it is usually because at some point there was some bleeding there[,] and it just scabbed over."

Next, Heather Lampe—an emergency-room nurse who had been called into the emergency department to photograph Curt's injuries—testified. Although it had been five years since she had taken the photographs of Curt,[2] Lampe said, "I definitely remember . . . the injuries." Without objection, she described them as "significant." She testified that she was supposed to transport Curt from the emergency room to radiology in a wheelchair, but Curt protested that sitting down hurt too much, so she carried Curt to the radiology exam table, and after he was x-rayed, she carried him back to the emergency room.

The investigator for Child Protective Services who sat with Curt while he was in the hospital testified—again without objection—that Curt's bruises were "very serious" and added, "I would say even still to this day the worst bruising that I've ever seen on a kid's bottom."

Additionally, without objection and during Corey's testimony, the State showed him three of the challenged photographs of Curt's ear and buttocks. Corey admitted that he had caused those injuries. Corey said that he had hit Curt's buttocks fifteen to

_____

[2]The exam was on September 29, 2016. Lampe testified on September 29, 2021, exactly five years later.

6

twenty times with a paddle. He acknowledged that it was even possible that he had hit Curt more than twenty times.

Finally, other photographs showing comparable injuries to Curt and Ann were admitted without objection. For example, when Lampe testified, photographs (State's Exhibits 133 and 135) showing the injuries that Corey had inflicted on Curt and Ann came in without objection. And when Officer Dean testified, another photograph (State's Exhibit 95) showing injuries to Ann was admitted without objection. The police also recovered from Corey's phone photographs displaying all three children with their pants down and with bruised buttocks; these photographs (State's Exhibit 145) were admitted without objection.[3]

We have reviewed the complained-of photographs. Curt's injuries were both severe and remarkable. That, however, is precisely what the witnesses said. A police officer with thirty-one years' experience said that she had "never seen injuries that severe." An emergency room nurse "definitely remember[ed] . . . the injuries" that she had witnessed five years earlier. Severe and remarkable bruising is also what other photographs—to which Corey did not object—showed as to both Curt and Ann and, to a lesser extent, Brenda. Because the same evidence came in through testimony and other photographs, we hold that Corey did not preserve his complaint regarding the

---

[3]In addition to Curt's buttocks, the back of his legs showed large bruises.

complained-of photographs. *See Valle*, 109 S.W.3d at 509; *Mallory*, 2019 WL 618893, at *12.

## B. Harm

Even if the trial court erred by admitting the eleven photographs, any error was harmless. Error in admitting evidence in violation of Rule 403 is generally not constitutional. *Perez v. State*, 562 S.W.3d 676, 691 (Tex. App.—Fort Worth 2018, pet. ref'd). We therefore apply Rule 44.2(b) and disregard the error if it did not affect the appellant's substantial rights. Tex. R. App. P. 44.2(b); *Perez*, 562 S.W.3d at 691. An error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Perez*, 562 S.W.3d at 691. Conversely, an error does not affect a substantial right if we have fair assurance that it did not influence the jury or had but a slight effect. *Id.*

When making a harm determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id.* If applicable, we may also consider the jury instructions, the State's theory, any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire. *Id.* at 692.

Initially, we note that Corey complains about the admission of State's Exhibits 2 through 12 depicting Curt's injuries. As discussed above, various witnesses testified

8

about the severity of Curt's injuries, and other comparable photographs of both Curt's and Ann's injuries were admitted without objection. When the disputed evidence is duplicative of other evidence admitted without objection at trial, any error in its admission is harmless. *See Redmond v. State*, 629 S.W.3d 534, 549 (Tex. App.—Fort Worth 2021, pet. ref'd).

Additionally, the State's cases turned on the credibility of Ann, Brenda, and Curt. The children's outcries were delayed. The State's theory was that the children were afraid of making outcries and then returning home to Corey where, as a form of discipline, they would face severe physical abuse. Without the photographs—even with the conviction for injury to a child—the extent of the physical abuse would again turn on witness credibility, and given the alleged seriousness of the abuse, jurors might question that credibility. With the photographs, the question of whether the children justifiably feared Corey's physical abuse answered itself.

Finally, the physical abuse supported Corey's theory of the case. During final arguments, Corey argued that the children were fabricating the allegations of sexual abuse to avoid having to live with him:

> And I told you at the start of this case what you would have to decide is what was motivating the kids. Was it the truth, or was it something else? And we learned what some motives can be in this case. . . . [T]hey didn't want to live with him. Rightly so. They wanted to live with their mom. . . .
>
> Secondly, they didn't like him. They hated him. I told you . . . in my opening statement that . . . there was physical abus[e]. I told you that there would be excessive discipline. I told you you probably wouldn't

9

like it and you wouldn't like [Corey] because of it, but I also told you this is not an injury to a child case. This is a sexual assault case and that we needed to be focused on that.

. . . .

So another motive that they might -- that I think it was clear is that they feared him because of the physical discipline. When he got out of jail, both [Brenda] and . . . [Curt] on the same day . . . made outcries.

Consequently, Corey leveraged the physical abuse to support his argument explaining why the children were falsely alleging sexual abuse.

For all the above reasons, we hold that the error, if any, in admitting State's Exhibits 2 thought 12 was harmless. *See Perez*, 562 S.W.3d at 691.

## C. Ruling

We overrule Corey's first point.

## II. THE MOTION FOR MISTRIAL

Second, Corey argues that the trial court erred by denying his motion for mistrial after a witness testified that when Brenda alleged that Corey had sexually abused her, she was being truthful. Specifically, Corey complains about the following exchange:

[PROSECUTOR:] Q. And [Brenda] talked to you about the sexual abuse, is that correct, with Michael Corey?

A. Yes. She was more open about it with me than the other two [children were]. And it wasn't to -- that she was being truthful, but it wasn't a bragging kind of thing or a -- what am I trying to say -- a wanting to make me feel really sorry for her kind of manipulation. I felt like it was really the truth.

[DEFENSE COUNSEL]: Judge, I'm gonna object to that --

10

THE WITNESS: Okay.

[DEFENSE COUNSEL]: -- as a violation of the motion in limine.

THE COURT: Counsel, approach.

(At the Bench, on the record outside the hearing of the jury.)

[PROSECUTOR]: Judge, I'll say that was the question that I asked and did not solicit that answer. And prior to coming to court, when I met with him, I told him not to say anything.

THE COURT: Okay.

. . . .

THE COURT: That objection will be sustained. The jury will be instructed to disregard.

(Open court, Defendant present, jury present.)

THE COURT: [Defense counsel], your objection is sustained.

Ladies and gentlemen of the jury, you are hereby instructed to disregard the last statement by the witness.

. . . .

[DEFENSE COUNSEL]: Judge, I'd also move for a mistrial at this time.

THE COURT: That request is denied.

When a trial court denies a motion for mistrial, an appellate court reviews the trial court's ruling for an abuse of discretion, considers the record in the light most favorable to the trial court's ruling, and upholds the denial if the trial court acted within a zone of reasonable disagreement. *McBurnett v. State*, 629 S.W.3d 660, 663 (Tex. App.—Fort Worth 2021, pet. ref'd); *Marchbanks v. State*, 341 S.W.3d 559,

561 (Tex. App.—Fort Worth 2011, no pet.). A mistrial is an extreme remedy and is appropriate only when an error is so highly prejudicial and incurable that further time and expense in the trial would be wasteful and futile. *Marchbanks*, 341 S.W.3d at 561–62. Only when a less drastic alternative is insufficient to cure the harm should a trial court grant a motion for mistrial. *Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009).

Generally, a prompt instruction to disregard cures any harm from prejudicial or nonresponsive testimony. *McBurnett*, 629 S.W.3d at 662. Thus, a trial court must grant a mistrial only when an improper question or answer is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds. *Id.* Unless the record shows this rare circumstance, an appellate court must presume that the jury followed the trial court's instruction. *Thomas v. State*, 461 S.W.3d 305, 311 (Tex. App.—Fort Worth 2015, no pet.). A prompt instruction to disregard is particularly curative when the challenged testimony concerns a single, brief, unsolicited reference to an inadmissible fact. *See McBurnett*, 629 S.W.3d at 663; *see also Redman v. State*, No. 01-19-00680-CR, 2021 WL 1133151, at *4 (Tex. App.—Houston [1st Dist.] Mar. 25, 2021, no pet.) (mem. op., not designated for publication) (considering that challenged references to an appellant's confinement were brief, unsolicited, and nonresponsive to the questions the State had asked). Courts rely on what amounts to an appellate

12

presumption that a jury will obey an instruction to disregard. *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987).

Here, the trial to determine whether Corey was guilty lasted six days. Brenda herself testified, and Corey's attorney cross-examined her.[4] Thus, the jury could evaluate Brenda's credibility for itself and did not have to rely on another witness's impression. Corey complains about one nonresponsive comment that the trial court promptly instructed the jury to disregard. In the context of a six-day trial, this one comment was not of such character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds. *See McBurnett*, 629 S.W.3d at 662. We presume the jurors followed the trial court's instruction, and nothing in the record refutes that presumption. *See Thomas*, 461 S.W.3d at 311. We hold that the trial court did not abuse its discretion by denying Corey's motion for mistrial.

We overrule Corey's second point.

### III. CONCLUSION

Having overruled both of Corey's points, we affirm all twenty-three convictions.

---

[4]All three children testified and were cross-examined. The children's adoptive mother testified too. She described Ann, Brenda, and Curt as "very good kids." Regarding Brenda, the adoptive mother said, "[Brenda] lies when she is afraid, and . . . if I say, '[H]ey, I'm gonna come back in ten minutes, figure out the truth,' she's got it . . . ." The adoptive mother added, "[Brenda's] my most trustful child. If I need to know what's happening, she's the one that I ask. She may get mixed up sometimes, but she wants . . . to do the right thing."

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 4, 2023